UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-201

JEFFREY COHEN,
SUSAN COHEN,
JEFFREY COHEN, TRUSTEE OF THE
BENJAMIN COHEN IRREVOCABLE TRUST OF 1994, and
JEFFREY COHEN, TRUSTEE OF THE
ABRAHAM COHEN REVOCABLE TRUST OF 1994                         Plaintiffs,

v.

SHEF LYLE,
LYLE ENERGY PARTNERS, INC.,
LE BIOMASS PROJECT 1, and
LE PROJECT 2007-B, LLC                                        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion for Partial Summary Judgment of the Defendants. (Docket No. 18.) Plaintiffs have responded (Docket No. 19), and Defendant has replied (Docket No. 20). This matter is now ripe for adjudication.

Although the initial motion was based upon procedural matters, the parties have also addressed substantive issues in their briefing. Accordingly, the Court will address each.

## BACKGROUND

Plaintiffs are investors who were allegedly induced by fraudulent misrepresentations to make loans to Defendant LE Biomass Project 1 ("LE Biomass") and acquire membership units in LE Project 2007-B, LLC ("LE Project"). Count II of Plaintiffs' Complaint alleges that the Defendants committed fraud in connection with the solicitation and sale of securities in LE Project.

According to Plaintiffs' Complaint of December 3, 2012, several of Defendants' alleged false and misleading statements are found in a "Confidential Private Placement Memorandum" (the "Memorandum") dated December 20, 2007. (Docket No. 19-1.) Such statements include:

> There are hereby offered Limited Liability Company Units ("Units") in LE Project 2007-B, LLC, a proposed Limited Liability Company, which shall be formed and activated, if at all, under Kentucky law and the Agreement of Limited Liability Company ("Limited Liability Company Agreement"). The LE Project 2007-B, LLC project consists of the drilling of five (5) new wells in Metcalfe County, Kentucky. The wells will be drilled to the Knox formation which is approximately 1600 to 1800 foot in depth.

(Docket No. 19-1. at 21; see also pp. 2, 12, and 13.) Plaintiffs allege that this statement proved false, as the Project neither drilled nor owned any wells.

According to the Complaint, the Defendants represented that wells to be drilled would generate income for Plaintiffs. (Docket No. 1 at 5.) Plaintiffs assert that the Defendants provided forecasts of production, causing Plaintiffs to conclude that they would receive a complete return of their investment in approximately two years. (Docket No. 1 at 5.)

Finally, according to Plaintiffs, Defendants represented that the LE Project had been formed as a Kentucky limited liability company ("LLC") and that the wells had been drilled and were producing. (Docket No. 1 at 5.) Plaintiffs argue that the latter representation was buttressed by Defendants' issuing to Plaintiffs an IRS Schedule K-1 for LE Project 2007-B, LLC and by issuing royalty checks purportedly for oil produced by the wells at issue. (Docket No. 1 at 5.)

Defendants contend that Plaintiffs "should have reasonably discovered any alleged fraud within months of the alleged misrepresentation and Plaintiff certainly should have discovered the fraud prior to December 3, 2009 (three years prior to the filing of Plaintiff's Complaint)." (Docket No. 18-1 at 2-3.) Therefore, Defendants assert that Plaintiffs' fraud allegation as to this investment is time-barred. Plaintiffs respond that a genuine issue of material fact exists as to

when the fraud should have been discovered. (Docket No. 19 at 1.) They insist that Mr. Cohen was without reason to suspect either that the LLC was never formed, or that the Project owned no wells, until after December 3, 2009, three years prior to this suit's filing. (Docket No. 19 at 2.)

**STANDARD**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; rather, he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) (abrogated on other grounds by *Lewis v. Humboldt*

*Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)). It is against this standard that the Court reviews the following facts.

## DISCUSSION

Kentucky adopted the Uniform Securities Act in 1961, as codified in Kentucky Revised Statutes Chapter 292. *Dolomite Energy, LLC v. Comm. of Ky. Office of Fin. Inst.*, 269 S.W.3d 833, 885 (Ky. Ct. App. 2008). The purpose of Chapter 292, or Kentucky's Blue Sky Law, is to

> [p]rotect investors by preventing investment fraud and related illegal conduct or, if this fraud or illegal conduct has already occurred, remedying, where possible, the harm done to investors through active implementation and application of this chapter's enforcement powers.

Ky. Rev. Stat. Ann. § 292. 530(1). Essentially, Blue Sky Laws place upon the seller of a security a duty of full disclosure relevant to the security's issuance. *J. Stan Developments, LLC v. Lindo*, No. 2008-CA-001796-MR, 2009 WL 3878084, at *1 (Ky. Ct. App. Nov. 20, 2009) (citing *Sec. Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)). "In other words, one cannot 'promise the sky,' and fail to disclose the pitfalls of the deal." *Id.*

As noted above, Defendants argue that Plaintiffs' claims for fraud cannot withstand the statute of limitations. Ky. Rev. Stat. § 282.480(5) dictates that a claim for securities fraud may not be brought "more than three (3) years from the date the occurrence of the act, omission, or transaction constituting a violation of this chapter was discovered, or in the exercise of reasonable care should have been discovered."). According to Defendants, Plaintiffs should have discovered the alleged fraud prior to December 3, 2009, i.e., three years before the Complaint was filed, rendering their action time-barred.

4

Although the statute of limitations is an affirmative defense to be raised in the answer, "[w]hen it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992)). "[P]laintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action." *Id.* (citations omitted). In addition, a plaintiff must do more than "plead only the date of discovery" to toll the statute of limitations. *Hoover,* 958 F.2d at 745 (noting that, for instance, a plaintiff may need to properly allege fraudulent concealment).

### I. A genuine issue of material fact exists as to whether Plaintiffs could have discovered that no LLC was formed prior to December 3, 2009.

According to Plaintiff's Complaint, the first of the alleged misrepresentations occurred on or after December 27, 2007, when Defendants represented that LE Project had been formed as a Kentucky limited liability company.

In the instant motion, Defendants contend that because a search of the Kentucky Secretary of State's website would have revealed that LE Project was not a registered LLC, Plaintiffs could have reasonably discovered this fact prior to December 3, 2009. (Docket No. 18-1 at 2.) However, the Memorandum states, in pertinent part:

> LE Project 2007-B, LLC is an entity that may be formed pursuant to the Kentucky Statutes. In the sole discretion of the Managing Member, to best protect the ownership interests and intended tax treatment of Investors, the Managing Member reserves the right to select a jurisdiction other than Kentucky for legal formation of the Limited Liability Company and or to identify the most appropriate type of legal entity for such formation.

5

(Docket No. 19-1 at 13.) Plaintiffs reason, therefore, that the absence of the Articles of Organization on the Kentucky Secretary of State's website would not have put them on notice that the LLC had not been formed in another jurisdiction, as the Managing Member retained the right to choose a jurisdiction outside Kentucky. (Docket No. 19 at 3-4.) Moreover, Plaintiffs argue that even had they reviewed the online registries of all fifty states, they still would not have been on inquiry notice, as the Managing Member retained the right to choose another form of organization. (Docket No. 19 at 4.)

Taking the evidence in the light most favorable to the Plaintiffs, there is at least a jury issue as to whether Plaintiff's failure to consult the Kentucky Secretary of State's website, or to review the websites of the forty-nine other states, was a failure to reasonably discover Defendants' alleged fraud prior to December 3, 3009. Arguably, since the Managing Member could have selected another business form, even a survey of the LLC databases of each of the fifty states would fail to put Plaintiffs on inquiry notice.

The Complaint states, "The Defendants . . . represented that the LE Project had been formed as a Kentucky limited liability company . . . in part, by issuing to the Plaintiffs an IRS Schedule K-1 for LE Project 2007-B, LLC (EIN 26-1630813) and issuing a few royalty checks." (Docket No. 1 at 5.) Defendants have not suggested otherwise. Therefore, construing the evidence in the light most favorable to the non-movants, the Court finds that a genuine issue of material fact exists as to this claim.

**II.     A genuine issue of material fact exists as to whether Plaintiffs could have reasonably discovered that Defendants owned no wells.**

Secondly, Plaintiffs have alleged that they did not realize that the Project did not drill or own any wells until after the Defendants ceased sending royalty checks. (Docket No. 1 at 5.)

Defendants point to the Memorandum's provision acknowledging the existence of "turn-key contracts," whereby Lyle Energy contracts with other "programs" to complete drilling projects.

The Memorandum makes clear that other companies may operate the wells at issue.[1] However, Defendants have offered no evidence demonstrating that they, in fact, owned the wells, creating a genuine issue of material fact as to this question.

In an allegation of fraud, summary judgment may be granted unless sufficient probative evidence is produced that, if believed, would clearly and convincingly establish fraud. *See Keck v. Wacker*, 413 F.Supp. 1377, 1383 (E.D. Ky. 1976) (discussing clear and convincing standard for fraud in Kentucky); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (heightened burden of proof must be met in opposing summary judgment). Here, Plaintiffs' contentions extend beyond the mere hope that the trier of fact will disbelieve the Defendants'

---

[1] *See, e.g.*, the paragraph titled "Conflicts of Interest," explaining that the LE Project's offerings were used to acquire an interest in wells drilled by an affiliate company. :

> Lyle Energy Partners, Inc. will serve as the Managing Member of the Limited Liability Company and will control the day-to-day activities and operations of the Limited Liability Company. Lyle Energy Partners, Inc. serves as a managing member of certain programs engaged in exploration for oil and gas. **These programs in turn enter into a "turn-key" contract with Lyle Energy and Development, Inc. for the actual drilling, testing and completion of any wells in the "programs."** This association between the Managing Member and the Operator could place the Managing Member in a position of a potential conflict of interest. As an example, the monthly operating costs being charged for the day-to-day operation of the Limited Liability Company's property have not been made in any "arm's length" negotiations. The principals of the Managers Member are also officers and/or members of these other companies.

(Docket No. 19-1 at 18) (emphasis added).

Furthermore, the Memorandum's Project Summary explains,

> LE Project 2007-B, LLC intends to acquire a 48% Working Interest in wells which consist of the drilling of five (5) new wells in Metcalfe County, Kentucky. . . . LE Project 2007-B, LLC is using the proceeds raised to acquire from Lyle Energy and Development, Inc. the 48% Working Interest and entering into a Turnkey Contract with Lyle Energy and Development, Inc. and Lyle Energy and Development, Inc. **may use affiliated companies** to complete the Turnkey Contract.

assertions; rather, they point to specific facts supporting their fraud claim.  For example, although the Memorandum declares that the Project would acquire a 48% interest in five wells to be drilled by an affiliate, the Project apparently acquired only a 22% interest in such wells. (Docket No. 19-1 at 23.)  Although Plaintiffs perceived a potential red flag when they stopped receiving royalty checks after June 2009, they were arguably without reason to suspect that the Project owned no wells until well after that date.

Accordingly, Plaintiff's fraud claim withstands Defendants' motion for partial summary judgment, as sufficient evidence of fraud exists to sustain a jury question.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment (Docket No. 18) is DENIED.  An appropriate order shall issue.